IN THE UNITED STATES DISTRICT COURT FOR THE
                      SOUTHERN DISTRICT OF ALABAMA
                           SOUTHERN DIVISION


TRACY G. ALLEN, #129732,            :

        Plaintiff,                  :

vs.                                 :   CIVIL ACTION 08-0322-WS-M

DR. BARNES,                         :

        Defendant.                  :


                     REPORT AND RECOMMENDATION


        This action is before the Court for review under 28 U.S.C. §

1915(g).  An Alabama prison inmate, who is proceeding *pro se* and

*in forma pauperis* at this time,[1] commenced this action.

Therefore, it was referred to the undersigned pursuant to 28

U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4) for appropriate

action.  After careful consideration, it is recommended that

Plaintiff's action be dismissed without prejudice pursuant to 28

U.S.C. § 1915(g).

I.  Proceedings.

        When the original Complaint was filed by Plaintiff, the

Court reviewed the it under 28 U.S.C. § 1915(e)(2)(B) and (g).

(Doc. 1).  Based on this review, and realizing that Plaintiff had

an extensive litigation history for filing complaints that fail

_____

        [1]Plaintiff's Motion to Proceed Without Prepayment of Fees
(Doc. 2) was granted.  (Doc. 3).  In light of this Report and
Recommendation, the grant of *in forma pauperis* status is hereby
**REVOKED.**

to state a claim upon which relief can be granted or that are

frivolous,[2] the Court, out of an abundance of caution, issued a

---

[2]A list in *Allen v. Dr. Barnes,* CA 09-0137-CG-C (S.D. Ala. May 13, 2009), reflects some actions filed by Plaintiff that can be counted as "strikes" for § 1915(g) purposes.  The following is a list from that action identifying some of Plaintiff's actions that have been dismissed as frivolous: *Allen v. Jones, et al.,* CA 90-0059-T-S (S.D. Ala. Mar. 31, 1992); *Allen v. Edwards, et al.,* CA 90-0076-BH-C (S.D. Ala. Sept. 11, 1991); *Allen v. Carver, et al.,* CA 90-0214-CB-S (S.D. Ala. Sept. 20, 1991); *Allen v. White, et al.,* CA 90-0561 (N.D. Ala. June 28, 1990); *Allen v. Patterson,* CA 90-0562 (N.D. Ala. June 26, 1990); *Allen v. State of Alabama,* CA 90-1100 (N.D. Ala. Aug. 21, 1990); *Allen v. Hunt, et al.,* CA 90-1101 (N.D. Ala. Aug. 21, 1990); *Allen v. Norman,* CA 91-0153 (N.D. Ala. May 29, 1991); *Allen v. Allen, et al.,* CA 91-1705 (N.D. Ala. Nov. 26, 1991); *Allen v. Hunt, et al.,* CA 91-1708 (N.D. Ala. Nov. 27, 1991); *Allen v. White, et al.,* CA 91-1935 (N.D. Ala. Feb. 3, 1992); *Allen v. Thigpen, et al.,* CA 91-2021 (N.D. Ala. Jan. 30, 1992); *Allen v. Battles, et al.,* CA 91-2476 (N.D. Ala. Apr. 17, 1992); *Allen v. Thigpen,* CA 92-1623 (N.D. Ala. Nov. 29, 1993); *Allen v. Chaplain,* CA 93-119 (N.D. Ala. Sept. 13, 1993); *Allen v. Nagle,* CA 93-897 (N.D. Ala. Sept. 1, 1993); *Allen v. Blankenship,* CA 93-1193 (N.D. Ala. Sept. 15, 1993); *Allen v. Martin*, CA 93-1801 (N.D. Ala. Mar. 2, 1994); *Allen v. Burton, et al.,* CA 93-1808 (N.D. Ala. Mar. 2, 1994); *Allen v. USPS,* CA 93-1834 (N.D. Ala. Mar. 2, 1994); *Allen v. Tucker,* CA 93-1929 (N.D. Ala. Dec. 28, 1993); *Allen v. Champale,* CA 93-1931 (N.D. Ala. Dec. 27, 1993); *Allen v. USPS,* CA 93-1932 (N.D. Ala. Dec. 28, 1993); *Allen v. Folsom, et al.,* CA 93-2229 (N.D. Ala. Apr. 1, 1994); *Allen v. State of Alabama*, CA 93-2272 (N.D. Ala. Apr. 4, 1994); *Allen v. Nagle,* CA 93-2350 (N.D. Ala. Mar. 31, 1994); *Allen v. Nagle, et al.,* CA 93-2399 (N.D. Ala. Apr. 1, 1994); *Allen v. DeLoach, et al.,* CA 93-T-1052-N (M.D. Ala. Oct. 6, 1993); *Allen v. Harrelson, et al.,* CA 93-H-1114-N (M.D. Ala. Oct. 22, 1993); *Allen v. Folsom, et al.,* CA 94-A-0288-N (M.D. Ala. Apr. 7, 1994); *Allen v. Dr. Thomas, et al.,* CA 94-0469-AH-S (S.D. Ala. Sept. 16, 1994); *Allen v. Jones, et al.,* CA 94-0572-CB-S (S.D. Ala. Nov. 7, 1994); *Allen v. Jones, et al.,* CA 94-0638-AH-S (S.D. Ala. Sept. 27, 1994); *Allen v. Folsom, et al.,* CA 94-A-0684-N (M.D. Ala. June 28, 1994); *Allen v. Folsom, et al.,* CA 94-A-0691-N (M.D. Ala. June 28, 1994); *Allen v. Allen, et al.,* CA 94-0987-RV-S (S.D. Ala. Jan. 31, 1995); *Allen v. Harrelson, et al.,* CA 94-D-1524-N (M.D. Ala. Dec. 27, 1994); and *Allen v. Naile, et al.,* CA 96-T-0446-N (M.D. Ala. Apr. 17, 1996).

service order requiring the person identified by Plaintiff as
Defendant, Dr. Barnes, to respond to the Complaint and to advise
the Court whether 28 U.S.C. § 1915(g) barred this action from
proceeding because Plaintiff did not pay the filing fee at the
time of filing.  (Doc. 3 at 1-2).

Section 1915(g) provides:

> In no event shall a prisoner bring a
> civil action or appeal a judgment in a civil
> action or proceeding under this section [28
> U.S.C. § 1915] if the prisoner has, on 3 or
> more prior occasions, while incarcerated or
> detained in any facility, brought an action
> or appeal in a court of the United States
> that was dismissed on the grounds that it is
> frivolous, malicious, or fails to state a
> claim upon which relief may be granted,
> unless the prisoner is under imminent danger
> of serious physical injury.

28 U.S.C. § 1915(g).

Because Plaintiff has more than three actions that were
dismissed as frivolous, this action can only proceed if Plaintiff
meets § 1915(g)'s exception, which is that at the time of filing
the prisoner was "under imminent danger of serious physical
injury." *Medberry v. Butler*, 185 F.3d 1189, 1193 (11th Cir.
1999) (holding that the plaintiff must face imminent danger of
serious physical injury at the time the complaint is filed, not
at a prior time).  Thus, the Court's focus will be on the period
of time during which the Complaint was filed.  The filing of
Plaintiff's Complaint occurred between June 3, 2008, when his
inmate account was completed (Doc. 2 at 4), and June 6, 2008,

3

when the Court received his Complaint (Doc. 1).  *See Garvey v. Vaughn,* 993 F.2d 776, 783 (11th Cir. 1993) (finding the delivery of prisoner's § 1983 action to prison officials for mailing to the court constitutes filing).

A. <u>Complaint</u>.  (Doc. 1)

A review of the information filed in this action by Plaintiff and Defendant reflects the following.  In the Complaint Plaintiff identifies the incident about which he complains as occurring on May 7, 2008.  (Doc. 1 at 3).  Prior to that date, on April 13, 2008, while Plaintiff's hands were in handcuffs behind his back, he was stabbed by an inmate with an ice pick, seven times in the left arm and hand, six times in the area of his kidneys and side of the heart, and once in the back of a lung. (*Id.*).[3]  Plaintiff was sent to the University of South Alabama for treatment.  (*Id.*).  Before Plaintiff was released, he asked the doctor about his hand.  (*Id.*).  The doctor told Plaintiff that "when you are stab[bed], [it] do[es] that[.]"  (*Id.*).  This

---

[3] The actual stabbing incident served as the basis for *Allen v. Moody, et al.,* CA 08-0255-CG-M (S.D. Ala. Sept. 9, 2008), which was dismissed pursuant to 28 U.S.C. § 1915(g).  The stabbing incident is also the basis of *Allen v. Moody, et al.,* CA 08-0227-WS-B, which is proceeding because Plaintiff paid the $350 filing fee.  In addition, Plaintiff challenged the medical care he received in April, 2008, in *Allen v. Dr. T. J.,* CA 08-0597-WS-B (S.D. Ala. Jan. 5, 2009), which was dismissed pursuant to § 1915(g).  The medical care Plaintiff received on April 15, 2008 was challenged in *Allen v. Barnes,* CA 09-0137-CG-C (S.D. Ala. May 13, 2009), which was dismissed pursuant to § 1915(g).

statement was heard by a security guard and a corrections officer. (*Id.*). The doctor just recommended pain medicine. (*Id.*).

On May 7, 2008,[4] Plaintiff asked Dr. Barnes to refer him to a neurologist for the injury to his arm and hand, to give him a brace, and to give him medication. (*Id.*). Plaintiff contends that Dr. Barnes "stated the reason [he doesn't] do what [he is] suppose to [is because Plaintiff] aint straight [with him]." (*Id.* at 3). Plaintiff guesses that Dr. Barnes's position is due to the possibility that Dr. Barnes may be gay and Plaintiff previously "protest[ed] against gay employees and inmates in Federal Court state wide." (*Id.* at 4). Plaintiff states that his "arm and hand are in chronic pain [and] nothing [is being] done about it[.]" (*Id.*). Plaintiff was told by a nurse that he will "always have problem[s] with [his] arm the rest of [his] life." (*Id.*). Plaintiff identifies his claims against Dr. Barnes as claims for inadequate medical treatment and for malpractice. (*Id.*).

Attached to the Complaint is a letter dated May 28, 2008, which Plaintiff purportedly wrote to Dr. Barnes about why Dr. Barnes would see not him on May 26, 2008. (*Id.* at 8). In this letter, Plaintiff indicates that a correctional officer and a

---

[4]Plaintiff also refers to the date of his request as April 7th, which is an incorrect date because he was stabbed on April 13, 2008. (*Id.* at 3-4).

nurse told Plaintiff that Dr. Barnes said that he would see Plaintiff on May 26, 2008. (*Id.*). At that appointment Plaintiff told Dr. Barnes that he needs a strong antibiotic and a referral to a neurologist because the veins were "running up [his] arm from the stab wombs [sic]." (*Id.*).

B. <u>Dr. Barnes's Special Report</u>. (Doc. 9)

Defendant Dr. Barnes's Special Report contains his affidavit and Plaintiff's medical records, which reflect the following. (Doc. 9, Ex. 4). Plaintiff was stabbed on April 13, 2008, at 4:35 p.m., "with punctures to his left back arm, left forearm, left side, left upper back, left mid-back, left lower back and left hand." (*Id.* at 4 (Barnes's Aff.) & at 29 (Body Chart)). At Holman's infirmary Plaintiff received Vaseline gauze for his puncture wounds, pain medication, and a tetanus shot. (*Id.*). Dr. Barnes ordered Plaintiff to be taken to Atmore Community Hospital where x-rays were taken, which revealed no significant injuries. (*Id.* at 4). Plaintiff was then transported to the University of South Alabama Medical Center ("USA"). (*Id.*). On April 14, 2008, Plaintiff was returned to Holman's infirmary because while he was at USA, no problems developed. (*Id.*). Dr. Barnes examined Plaintiff upon his return and prescribed Lortab as needed for pain, which was consistent with the USA's treating physician's orders. (*Id.* at 5 & 41). Plaintiff remained in the Holman's infirmary until April 15, 2008, when he said that he was

6

"alright." (*Id.* at 5).  Dr. Barnes continued to prescribe pain
medicine to Plaintiff in response to his complaints about pain.
(*Id.*).  The Lortab was suspended on April 15, 2008, and was
replaced with Motrin.  (*Id.* at 26-27).

On April 16, 2008, Dr. Barnes ordered that a second set x-
rays be taken of Plaintiff's left hand, wrist, and forearm, and
then prescribed antibiotics and pain medication for Plaintiff.
*Id.* at 5, 14 & 27).  The x-rays taken at Holman showed no
"significant fracture, dislocation or other injuries of any
significance." (*Id.* at 5).  The x-ray report of the left forearm
stated: "There is no fracture, dislocation, or lytic or blastic
lesions.  The radius and ulna as well as the bones of the elbow
and wrist visualized are all normal." (*Id.* at 44).  The
impression was "normal left arm." (*Id.*).  The x-ray report of
the left wrist stated: "No acute osseous findings.  Slight
deformity distal radius suggests old injury.  Follow up suggested
if symptoms persist." (*Id.* at 45).  The impression was "within
normal limits." (*Id.*)  The x-ray report of the left hand stated:
"Both views of the left hand do not show evidence of fracture,
dislocation, or lytic or blastic lesions.  All the digits,
interspaces as well as the carpals, metacarpals and bones of the
forearm visualized are all intact." (*Id.* at 46).  The impression
was "normal left hand." (*Id.*).

Plaintiff did not request any further specific treatment or

7

attention until May 4, 2008, when Plaintiff filed a sick call
request asking to see a "free-world" doctor to see if the ice
pick ruptured a vein, as he was not healed, and to receive pain
medication. (*Id.* at 5 & 48).  When Plaintiff was summoned on May
4, 2008, to sick call, he declined to meet with a member of the
nursing staff and stated that he would wait to see Dr. Barnes at
his scheduled appointment. (*Id.* at 5).  On May 7, 2008,
Plaintiff complained to Dr. Barnes at the chronic care clinic
about pain. (*Id.* at 18).  Then on May 13, 2008, Plaintiff
submitted a sick call request asking to see a specialist and to
receive antibiotics. (*Id.* at 6).  At sick call, Plaintiff stated
that the non-steroidal, anti-inflammatory drugs and non-narcotic
pain medication were ineffective and he wanted to see a
specialist. (*Id.*).  Plaintiff advised that he thought that he
was stabbed in a tendon and that he had shooting pains down his
arm to his hand. (*Id.* at 51).  Dr. Barnes altered Plaintiff's
pain medication but did not prescribe an antibiotic because he
did not find any infection. (*Id.* at 5 & 47).

 At this time Dr. Barnes reasoned that:

> Given the nature of Mr. Allen's injuries at
> this point in time, it was not absolutely
> clear that his discomfort was not part of the
> normal healing process for the injuries he
> sustained in the altercation with another
> inmate.  Therefore, I, along with other
> members of the medical staff at Holman,
> continued to believe that it was appropriate
> to continue this course of treatment prior to
> considering any further evaluation by any

specialist.

(*Id.* at 5).

In Plaintiff's sick call request of May 23, 2008, he requested to see a neurologist and to receive antibiotics. (*Id.*).  At sick call on May 25, 2008, his arm showed some swelling and, because of that, he requested an appointment earlier than his scheduled July 11, 2008, appointment with the doctor, a referral to a specialist, and a front-cuff profile because his hand was swollen.  (*Id.* & at 57).  An infection requiring antibiotics was not indicated.  (*Id.* at 5).  Plaintiff was instructed to return in two weeks.  (*Id.*).

Plaintiff then filed this action five days before his follow-up appointment on June 11, 2008.  (*Id.*).  At the time of Complaint's filing Plaintiff was on medication for pain from his injuries.  (*Id.*).  Plaintiff was taking Percogesic, which was prescribed May 14, 2008, with an expiration date of June 13, 2008, and was using an analgesic balm, which was prescribed on May 31, 2008, and due to expire on June 5, 2008, and was taking doxycycline tablets, which were ordered on June 2, 2008, for a month and began being dispensed on June 7, 2008.  (*Id.* at 60).

On June 11, 2008, at the follow-up appointment Plaintiff complained of pain and weakness in his left forearm and hand. (*Id.* at 5 & 61).  Dr. Barnes found that Plaintiff had good range of motion in his left hand, but he "refused to demonstrate any

9

hand strength when asked to squeeze [Dr. Barnes's] hand." (*Id.*
at 6). "Given that this pain had not been resolved at this point
in time, [Dr. Barnes] elected to refer Mr. Allen for further
evaluation by a specialist and he completed the necessary
paperwork regarding this consultation on the same day as this
evaluation." (*Id.*). Dr. Barnes's request indicates that he
wanted testing to disprove nerve damage. (*Id.* at 61). The
request was approved and an appointment was scheduled for July 9,
2008. (*Id.* at 62).[5] Dr. Barnes was not authorized to inform
Plaintiff of the decision to send him to a "free-world"
specialist due to security protocols with ADOC. (*Id.* at 6).

On July 1, 2008, Plaintiff filed a sick call request seeking
an arm brace, antibiotics, and a referral to a specialist.
(*Id.*). However, when Plaintiff arrived at sick call, he refused
to see any member of the staff. (*Id.*). Then on July 3, 2008, in
response to another sick call request, Plaintiff received an
evaluation during which he complained of numbness in his hand and
wrist and of limited range of motion. (*Id.*). On account of
Plaintiff's prescription for pain medication being current and
his consultation with a specialist pending, the course of
treatment, at that time, remained the same. (*Id.*).

On July 9, 2008, Plaintiff had an appointment with a

---

[5]The fax approving the referral to Neurology Consultants and
setting the appointment reflects that the fax requesting the
referral was sent on June 11, 2008. (Doc. 9, Ex. 4 at 62).

neurologist, Dr. Epperson, at Neurology Consultants in Montgomery, Alabama, who prescribed medication and a splint for his left hand and ordered a follow-up evaluation with a neurologist. (*Id.* at 7 & 70). Dr. Epperson diagnosed Plaintiff with mild to moderate carpal tunnel syndrome in his left hand and moderate to severe tardy ulnar palsy with entrapment at the left elbow in the left forearm. (*Id.* at 70). Dr. Barnes entered orders consistent with the neurologist's recommendation, and Plaintiff received a wrist splint on July 12, 2008. (*Id.* at 7 & 72). Plaintiff was prescribed Percogesic and Vitamin B6. (*Id.* at 63).

On July 23, 2008, Plaintiff submitted another sick call request for a brace for his hand and for an appointment with specialist, and then another request the following day for an appointment with a neurologist, claiming a doctor told him that surgery and a vitamin would cure him. (*Id.* at 8). After evaluation and referral by the staff, Dr. Barnes evaluated Plaintiff on July 25, 2008 and referred him to a neurosurgeon for consideration of carpel tunnel syndrome in the left arm. (*Id.* & at 77, 79).

On August 5 and 7, 2008, Dr. Barnes examined Plaintiff as a result of his sick call request for "shots" for an infection. (*Id.* at 8). During this evaluation, Plaintiff did not voice any complaints related to his stab wounds. (*Id.*). On August 13,

2008, Plaintiff complained of shooting pains in his arm and hand
and requested to be seen by a specialist.  (*Id.*).

On August 25, 2008, Plaintiff had a follow-up examination
with Neurology Consultants in Montgomery.  (*Id.*).  The next day
Dr. Barnes entered orders that followed the neurologist's
recommendation that Plaintiff receive "Prostyle Stabilizing Wrist
Wrap," Percogesic for pain, and an x-ray of the right shoulder.
(*Id.*).  When Dr. Barnes evaluated Plaintiff on August 26, 2008,
for another issue, Plaintiff did not complain about his left arm,
wrist, or hand.  (*Id.*).  The staff x-rays of Plaintiff's right
shoulder on August 27, 2008, were negative.  (*Id.*).

On October 16, 2008, Dr. Barnes stated:

> Mr. Allen's condition is stable as of this
> date.  Based upon the evaluations of Mr.
> Allen's condition by the neurologist that the
> injuries he sustained on April 13, 2008,
> contributed to the development of the
> condition known as "carpal tunnel syndrome"
> or median neuropathy in his left hand wrist
> and forearm.  It is well-established in the
> medical community that the proper accepted
> method of treatment for carpal tunnel
> syndrome includes the use of non-narcotic
> pain medications (with some anti-inflammatory
> characteristics, if necessary) such as
> Percogesic, which we have prescribed and
> provided to Mr. Allen, and the splinting of
> the wrist to minimize pressure on the carpal
> tunnel.  There are no signs of any infection
> which would warrant prescribing any
> antibiotic medication for Mr. Allen's left
> arm.  This is exactly the course of action
> currently being taken with regard to Mr.
> Allen.  There is no objective medical
> evidence of any kind that Mr. Allen's carpal
> tunnel condition poses any significant long

12

> term risks such as paralysis or debilitating
> pain, though he may experience intermittent
> periods of stiffness, limited motion and
> discomfort depending upon his use of the
> splint and the activities he attempts to
> undertake.  At this point in time, the
> medical staff intends to continue to monitor
> Mr. Allen's condition with the assistance of
> an outside neurologist and pursue any
> appropriate steps to limit the symptoms
> associated with his condition and eliminate
> any deterioration of his normal use of his
> left hand, wrist and arm.  In short, there is
> no imminent danger of any kind to Mr. Allen
> regarding his left hand, wrist and arm and he
> has received at least two neurological
> consultations for his condition, which he
> requested in his Complaint.

(*Id.* at 10-11).

    C. Filings Since the Special Report's Filing.

    Since the filing of the Special Report (Doc. 9), the Court

has received other information about Plaintiff's condition, which

is based mostly on Plaintiff's filings.  Dr. Epperson, after the

July 9, 2008, examination, included in his report that he "would

consider surgical referral for decompression of the ulnar nerve

at the elbow and CTS." (Doc. 16 at 2).  On September 25, 2008,

Plaintiff was sent to another neurologist, Dr. Quindlen, in

Mobile, Alabama, who told Plaintiff that he was not able to treat

Plaintiff until he received Plaintiff's medical records.  (Doc.

21 at 1).  Then Plaintiff was referred to Dr. Myers and Dr.

Wilson at USA for surgery.  (Doc. 26).  On February 2, 2009, when

Plaintiff arrived for his surgical appointment, Plaintiff told

them to "hold up. Let['s] get another test[,] electrical shock

13

treatment and EMG[.]" (*Id.*).  A doctor said, "[T]hat's even
better, so he set [an] appointment for Feb 12th at Mobile
Infirmary." (*Id.*).  This test determined that Plaintiff did not
need surgery because the situation between the elbow and his
shoulder was caused by Plaintiff sleeping on it, and Plaintiff
was told not to do anything to it. (*Id.*).  Plaintiff was advised
if he had further problems that he should return. (*Id.*).  In a
medical grievance Plaintiff asked for an elbow brace that was
recommended for him, which he had not received. (Doc. 29).  The
response to Plaintiff's medical grievance stated, "Dr. At Mobile
Infirmary stated no therapy needed and there was no order for
medicine." (*Id.*).

The records from the tests conducted on February 12, 2009,
at Mobile Infirmary state that the "EMG gives evidence of mild
chronic denervation with reinnervation in the distribution,
consistent with a lesion at the elbow and the ulnar nerve.  No
acute denervation is noted.  Clinical correlation is required."
(Doc. 35 at 5).  The nerve conduction velocity test resulted in
"[f]indings consistent with mild to moderate cubital tunnel
syndrome on the left." (*Id.* at 8).  Plaintiff states that when
he received an electrical shock during one of his tests over the
course of his treatment for his arm, wrist, and hand injuries his
hand came to life within 70% of the normal range. (Doc. 37 at
2).

II.   <u>Analysis</u>.

    A.   <u>The Application of § 1915(g)</u>.

    After reviewing the Court's file, it has become abundantly clear that this action is barred by 28 U.S.C. § 1915(g). Plaintiff's allegations do not indicate that at the time the Complaint (Doc. 1) was filed, between June 3 and June 6, 2008, that he was under "imminent danger of serious physical injury." In the Complaint Plaintiff identifies that date of the complained of incident as May 7, 2008 (Doc. 1 at 3), even though the records show that he had an appointment on May 7, 2008.  (Doc. 9, Ex. 4, at 18).  At the appointment Plaintiff complained that nothing was being done for the chronic pain in his hand, and Dr. Barnes denied Plaintiff's request to be referred to a neurologist.  (*Id.* at 3-4).  Because these allegations by themselves showed an "imminent danger of a serious physical injury" or the potential therefor, the Court elected to serve the Complaint.  Its reasoning was two-fold.  The Court did not know if Plaintiff was prevented by his injuries from filing his Complaint on May 8, 2008.  And the Court wanted to be assured that Plaintiff was not in "imminent danger of a serious physical injury."  This determination could not be made on Plaintiff's allegations as he was complaining about not receiving adequate treatment, notwithstanding the fact that he was being seen by Dr. Barnes.

    In regard to the Court's first concern, neither party

indicates whether Plaintiff was able to write on May 7, 2008, the date of the alleged incident.  However, the medical records reflect that Plaintiff was able to write on May 4, 2008, when he filed a request to see a "free-world" neurologist to determine if a vein was ruptured in his left arm because his arm was not healing and to obtain pain medication.  (*Id.* at 48).  Based on this document, the Court finds that Plaintiff was able to write on May 7, 2008, when the complained of incident occurred, and could have filed his Complaint then.  (*Id.* at 18).

Turning to the time when the Complaint was actually filed, between June 3 and 6, 2008, the records and Dr. Barnes's affidavit indicate that Plaintiff was receiving medical care.  At the time when the Complaint was filed, Plaintiff was receiving Percogesic for pain in hand, wrist, and arm (*id.* at 47) and then an analgesic balm from June 1 to June 5, 2008 (*id.* at 15 & 60), in addition to other medications for chronic conditions and ailments.  Immediately prior to the Complaint's filing, on May 25, 2008, Plaintiff was receiving Motrin 600 m.g. twice a day for five days in addition to Percogesic.  (*Id.* at 14 & 45).

Interestingly, Plaintiff has not specified the serious physical injury that he was in imminent danger of sustaining at the time of Complaint's filing, which was or would be caused by Dr. Barnes's actions.  Section 1915(g) "require[s] *specific* allegations of present imminent danger that may result in serious

16

physical harm." *Ball v. Allen,* 2007 WL 484547, at *1 (S.D. Ala. Feb. 8, 2007) (Granade, J.) (emphasis added) (citing *Brown v. Johnson,* 387 F.3d 1344, 1349 (11th Cir. 2004)); *see Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir. 2003) (a "general assertion is insufficient to invoke the exception to § 1915(g) absent specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"). Therefore, it is incumbent on Plaintiff to show that he sustained or would sustain a serious physical injury from the treatment that he was receiving. Plaintiff has not done this. *Compare Martin,* 319 F.3d at 1050 (finding the plaintiff's allegation that they were trying to kill him by making him work outside in the extreme temperatures despite his high blood pressure was conclusory and insufficient to invoke § 1915's exception); *Skillern v. Paul,* 202 Fed. Appx. 343, 344 (11th Cir. 2006) (unpublished) (finding that the vague allegations did not satisfy § 1915(g)'s exception because there was no description of the medical condition causing the need for the medicine or of the consequences if the medicine was not given), *with Brown v. Johnson,* 387 F.3d 1344, 1350 (11th Cir. 2004) (finding that the allegations of a complete withdrawal of treatment for hepatitis and HIV, of the specific conditions that resulted, and of the potential for opportunistic infections, such as pneumonia, esophageal candidiasis, salmonella, and

wasting syndrome, which would hasten death, alleged an "imminent danger of serious physical injury").

In the absence of an identified injury, it appears that Plaintiff would have the Court second-guess Dr. Barnes and presume an injury from the treatment Dr. Barnes was giving Plaintiff.  This the Court cannot do.  See *Hamm v. DeKalb County,* 774 F.2d 1567, 1575 (11th Cir.) (a dispute over the adequacy of medical treatment does not show the required deliberate indifference for a claim of cruel and unusual punishment and places the federal court in the position of having to second-guess medical judgments which it is reluctant to do), *cert. denied,* 475 U.S. 1096 (1986).

Nonetheless, the Court concludes that it would be extremely difficult to identify such an injury because Plaintiff is receiving treatment.  The Court notes that Plaintiff's greatest injury was being stabbed.  And, if medical care was never provided to him, a significant injury possibly would have resulted.  But Plaintiff was provided medical care.  Therefore, this Court is unable to discern a serious physical injury that was imminent at the time of filing.

Furthermore, Dr. Barnes, who has medical expertise, states:

> There is no objective medical evidence of any kind that Mr. Allen's carpal tunnel condition poses any significant long term risks such as paralysis or debilitating pain, though he may experience intermittent periods of stiffness, limited motion and discomfort

18

> depending upon his use of the splint and the
> activities he attempts to undertake.  At this
> point in time, the medical staff intends to
> continue to monitor Mr. Allen's condition
> with the assistance of an outside neurologist
> and pursue any appropriate steps to limit the
> symptoms associated with his condition and
> eliminate any deterioration of his normal use
> of his left hand, wrist and arm.  In short,
> there is no imminent danger of any kind to
> Mr. Allen regarding his left hand, wrist and
> arm and he has received at least two
> neurological consultations for his condition,
> which he requested in his Complaint.

(*Id.* at 10-11).  Accordingly, it does not appear that at the time

of filing that Plaintiff was "under imminent danger of serious

physical injury." *Medberry*, 185 F.3d at 1193.

Because Plaintiff cannot avail himself of § 1915(g)'s

exception and did not pay the $350.00 filing fee at the time he

filed this action, Plaintiff's action is due to be dismissed

without prejudice. *Dupree v. Palmer,* 284 F.3d 1234, 1236 (11th

Cir. 2002) (holding that an action must be dismissed without

prejudice when an inmate who is subject to 28 U.S.C. § 1915(g)

does not pay the full filing fee at the time he *initiates* the

action); *Vanderberg v. Donaldson,* 259 F.3d 1321, 1324 (11th Cir.)

(holding that the filing fee paid must be paid by an inmate

subject to § 1915(g) at the time an action is commenced), *cert.*

*denied,* 535 U.S. 976 (2002).  Accordingly, it is recommended that

this action be dismissed without prejudice pursuant to 28 U.S.C.

§ 1915(g).

B.   Dishonesty in the Complaint.

In the alternative, another reason on which to dismiss this action is Plaintiff's failure to list on the complaint form the actions that he previously filed.  (Doc. 1 at 3).  Plaintiff only identified one action on the complaint form that he had previously brought, *Allen v. Warden Charlie Jones, et al.,* CA 90-1067 (M.D. Ala. 1990), in which he claims a settlement was entered.[6]  Whereas, the Court is aware numerous actions filed by Plaintiff.  Even though Plaintiff signed his Complaint under penalty of perjury, he did not list these other actions and each action's pertinent information.  This information is highly relevant to this action that he filed as a prisoner and for which he did not pay the filing fee at the time of filing because the Court is under a duty pursuant to 28 U.S.C. § 1915 to enforce § 1915(g)'s bar and to screen complaints under § 1915(e)(2)(B).

The Court in *Wallace v. Strength,* 2008 WL 2097146, at *4 (S.D. Ga. 2008) (unpublished), dismissed an action pursuant to 28 U.S.C. § 1915(g) and noted that the complaint was also subject to dismissal for dishonesty in the complaint.  *Id.* at *1-*2.  The plaintiff in *Wallace* only identified one prior action on the complaint form, which he had signed under penalty of perjury, even though he had filed several actions that had resulted in

---

[6]This action was not able to be identified using PACER (Public Access to Court Electronic Records).

dismissals qualifying him for treatment under § 1915(g). *Id.* at *1 & *4. The *Wallace* Court determined that an appropriate sanction for abuse of the judicial process was the dismissal of the complaint without prejudice. *Id.* at *4.

In the action at hand, the Court finds that Plaintiff has not been honest in his response to the complaint form's inquiry into his prior actions. Honesty in Plaintiff's representations to the Court is of utmost importance. Rule 11 of the Federal Rules of Civil Procedure "forbids lying in pleadings, motions, and other papers filed with the court[.]" *Zocaras v. Castro,* 465 F.3d 479, 484 (11th Cir.), *cert denied,* 549 U.S. 1228 (2007). Furthermore, misrepresentations to the court under Rule 11(b) are subject to sanctions pursuant to Rule 11(c). FED.R.CIV.P. 11(c). Sanctions include the involuntary dismissal of an action pursuant to Rule 41(b) of the Federal Rules of Civil Procedure for failure to abide by the Federal Rules of Civil Procedure. *Zocaras,* 465 F.3d at 484; *see also Moon v. Newsome,* 863 F.2d 835, 837 (11th Cir.) (ruling a *pro se* litigant is "subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure"), *cert. denied,* 493 U.S. 863 (1989). The Court also has the inherent power to dismiss an action based on its authority "to enforce its orders and ensure prompt disposition of legal actions." *Zocaras,* 465 F.3d at 490 (appendix); *see Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 54, 111 S.Ct. 2123,

21

2132, 2138 (1991) (holding the federal courts' inherent power to manage their own proceedings authorized the imposition of attorney's fees and related expenses as a sanction for a fraud perpetrated on the court.)

Therefore, this action is due to be dismissed for Plaintiff's lack of honesty in his responses to the Court's complaint form's question concerning his prior litigation history.  Considering the type of sanctions that are available to Court in light of Plaintiff's status as an indigent prisoner, it is recommended, in the alternative, that this action be dismissed without prejudice.

III.  <u>Conclusion</u>.

Based upon the forgoing reasons, it is recommended that this action be dismissed without prejudice.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS<br>
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION<br>
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.   **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing

22

a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Transcript (applicable where proceedings tape recorded)**.
Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 10th day of June, 2009.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE